**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :   No. 3:02CR00257(CFD)
UNITED STATES OF AMERICA     :
                             :
v.                           :
                             :
TYRUS PIERCE                 :
                             :   March 4, 2005
-----------------------------x
```

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

After the Supreme Court's ruling in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), the United States Sentencing Guidelines are no longer mandatory; they are now "effectively advisory" in all cases. <u>Id.</u> at 757. The Court cannot, under <u>Booker</u>, simply apply the sentence suggested by the Guidelines, without further analysis. Instead, federal law requires the Court to "impose a sentence sufficient, <u>but not greater than necessary</u>, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2), and to consider the range suggested by the Guidelines as just one of a number of factors. 18 U.S.C. § 3553 (2005) (emphasis added). Under this standard, we respectfully submit that the appropriate sentence for Tyrus Pierce is 120 months of incarceration.

## I.    BACKGROUND

The full background of this case is set forth in the defendant's original sentencing memorandum. <u>See</u> Doc. # 254. The defendant filed his original sentencing memorandum in this case on June 22, 2004. Two days later, the United States Supreme

Court issued its decision in <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (June 24, 2004).  The Court commenced the sentencing hearing on June 30, 2004.  At that time, the Court heard arguments from counsel and, at the close of the hearing, the Court informed counsel that its inclination was to sentence the defendant under the Guidelines to a term of incarceration in the range of 151-188 months.  The Court also permitted counsel for the defendant and for the government to prepare supplemental briefs discussing the impact of <u>Blakely</u>.

The defendant submitted a supplemental brief on July 28, 2004, arguing that in light of <u>Blakely</u>, an appropriate sentence would be a term of incarceration in the range of 120-150 months. <u>See</u> Doc. # 262.  On August 2, 2004, the Supreme Court granted certiorari in two cases raising the question of whether <u>Blakely</u> applies to the federal Guidelines and, if so, how.  <u>See</u> <u>United States v. Booker</u>, 125 S.Ct. 11 (2004); <u>United States v. Fanfan</u>, 125 S.Ct. 12 (2004).  On August 12, 2004, the Second Circuit held that District Courts in the Circuit should continue to apply the Guidelines as they had pre-<u>Blakely</u>, pending clarification from the Supreme Court regarding <u>Blakely</u>'s application to the federal Guidelines.  <u>See</u> <u>United States v. Mincey</u>, 380 F.3d 102 (2d Cir. 2004).  In light of the holding in <u>Mincey</u>, this Court did not rule on the parties' <u>Blakely</u> arguments, and Mr. Pierce's sentencing was postponed awaiting further guidance from the

-2-

Supreme Court.

On January 12, 2005, the Supreme Court issued its opinion in the consolidated cases of Booker and Fanfan, finding that the holding of Blakely applies to the federal Guidelines; declaring 18 U.S.C. § 3553(b)(1), which made the Guidelines mandatory, unconstitutional; and severing that provision from the remainder of the Sentencing Reform Act.[1]  See United States v. Booker, 125 S.Ct. 738 (2005).  On February 2, 2005, the Second Circuit issued United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), explaining how district courts in the Circuit should impose sentences in light of Blakely and Booker.

Counsel for Mr. Pierce requested leave to file this supplemental sentencing memorandum addressing the impact of Booker and Crosby on Mr. Pierce's sentence.  On February 17, 2005, the Court granted that request and set a new sentencing date of April 12, 2005.

The defendant hereby adopts, as if set forth fully herein, all of the arguments made in his original sentencing memorandum (Doc. # 254) and in his supplemental sentencing memorandum addressing the effect of Blakely (Doc. # 262).

## II.  **DETERMINATION OF THE APPROPRIATE SENTENCE**

The determination of a defendant's sentence is now governed

---

[1] The Court also declared 18 U.S.C. § 3742(e), which sets forth the standards of appellate review of sentences, unconstitutional and severed it from the remainder of the Act.

by <u>Booker</u> and <u>Crosby</u>.   <u>Crosby</u> indicates that "a sentencing judge
will normally have to determine the applicable Guidelines range,"
<u>Crosby</u>, 397 F.3d at 111, and then decide what sentence "would
have been imposed under the Guidelines, <u>i.e.</u>, a sentence within
the applicable Guidelines range or within permissible departure
authority," <u>id.</u> at 113.   This the Court has already done,
indicating that it believed an appropriate sentence <u>under the
Guidelines</u> would be at Criminal History Category VI, Offense
Level 29, for a range of 151-188 months of incarceration.

"Once an applicable Guidelines range has been determined,
the sentencing judge will have the duty, imposed by subsection
3553(a)(4), to 'consider' it, along with all of the factors
listed in section 3553(a)." <u>Id.</u> at 112.   The Second Circuit
declined, in <u>Crosby</u>, to determine "what weight the sentencing
judge should normally give to the applicable Guidelines range."
<u>Id.</u> at 113.   It is clear, however, that all of the enumerated
factors are to be given due consideration: "Now, with the
mandatory duty to apply the Guidelines excised, the duty imposed
by section 3553(a) to 'consider' numerous factors acquires
renewed significance." <u>Id.</u> at 111.

**A.    Sentence Suggested by the Guidelines**

The base offense level under the 2002 Guidelines for this
offense is 32.   The parties and the Probation Office agree that
Mr. Pierce is entitled to a reduction of three offense levels for

-4-

acceptance of responsibility under U.S.S.G. § 3E1.1(b), resulting
in an adjusted offense level of 29.  The government asserts that
Mr. Pierce is a career offender and thus, under § 4B1.1, his
offense level should be increased to 37 before the adjustment for
acceptance of responsibility, resulting in an adjusted offense
level of 34.

     In his original sentencing memorandum, Mr. Pierce argued
that the Court should depart downward on a number of bases,
including the circumstances surrounding the first qualifying
conviction making Mr. Pierce subject to the career offender
enhancement; the disproportionality of the sentence suggested by
the Guidelines to the time previously served by Mr. Pierce; the
extraordinary childhood abuse suffered by Mr. Pierce; Mr.
Pierce's psychological problems; and a combination of all of
these factors.  The government opposed a downward departure under
any one of the theories advanced by the defendant, but did not
oppose a downward departure based upon a combination of factors.
See, e.g., United States v. Rioux, 97 F.3d 648, 663 (2d Cir.
1996) ("[T]he district court may downwardly depart when a number
of factors that, when considered individually, would not permit a
downward departure, combine to create a situation that differs
significantly from the heartland cases covered by the
guidelines.").  The Court indicated at the defendant's first
sentencing hearing that, applying the Guidelines, its inclination

at that time was to grant the defendant's request for a downward departure based upon a combination of factors, departing on that basis to offense level 29.  Thus, the "Guidelines sentence," Crosby, 397 F.3d at 113, in this case is 151-188 months.

**B.    Appropriate Sentence Under 18 U.S.C. § 3553(a)**

Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2).  18 U.S.C. § 3553(a) (2005) (emphasis added).  This provision is sometimes referred to by commentators as the "parsimony provision."  The parsimony provision is not just another factor; it is an independent requirement of the statute, adopted by Congress and affirmed by the Supreme Court, which restricts the Court's discretion in imposing a sentence.  Under this provision, the Court must not impose a sentence greater than is necessary to achieve the purposes listed.  Those purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2) (2005).  We submit that a sentence of 120 months' incarceration is sufficient to achieve each of these purposes, without being greater than necessary.

-6-

Ten years is a long time.  It is more than adequate to serve
the purposes of providing just punishment and promoting general
deterrence.  Most importantly, a sentence of ten years serves the
specific deterrence goal of ensuring that Tyrus Pierce will not
commit further crimes when he is released.  Indeed, having served
more than two years of his undesignated sentence in pretrial
detention at Wyatt, Mr. Pierce has already learned his lesson the
hard way.  He knows now that he does not want to go back to
prison, _ever_.  He is far from his home, and the family he was
trying to build for himself.  He misses his children.  As Mr.
Pierce has said recently, he gets it now.  It will not take a
sentence of 188 or even 151 months to ensure that Mr. Pierce does
not re-offend.  The 28 months he has served in federal custody
have already had a profound effect on him.  No more than the
statutory minimum term of ten years is required to ensure that
the effect is permanent.

Likewise, a sentence of 120 months serves the purpose of
ensuring that Mr. Pierce will receive the education and
vocational training and other correctional treatment he needs.
Mr. Pierce has tried his best to achieve these goals even while
he has been detained at Wyatt, a facility poorly suited to
rehabilitation.  In the two years he has been detained, Mr.
Pierce has participated in every program available at Wyatt,
limited as the choices are.  He already has his G.E.D.  He has

-7-

taken part in the anger management program multiple times, even
though he completed it early on in his detention.  He attends
Narcotics Anonymous meetings.  He spends most of his time
reading; he has read nearly every book in the Wyatt library, and
regularly reads the newspapers.  Sometimes, he works around the
facility, doing maintenance and cleaning work.

When Mr. Pierce is assigned to a facility to serve his
sentence, he will be ready and willing to take advantage of the
programs available to him.  Mr. Pierce asks that the Court
recommend that he be permitted to participate in the 500-hour
residential drug treatment program as soon as he becomes
eligible, so that he can have the best opportunity to recover
from the marijuana addiction that has plagued him throughout his
life.

Furthermore, when Mr. Pierce is released to the community,
he will be ready and willing to take advantage of the
opportunities available to him there.  As federal law
acknowledges, prison is not really designed for rehabilitation.
See 18 U.S.C. § 3582 ("The court, in determining . . . the length
of the term [of imprisonment], shall consider the factors set
forth in section 3553(a) to the extent that they are applicable,
recognizing that imprisonment is not an appropriate means of
promoting correction and rehabilitation.").  The sooner Mr.
Pierce is released, the sooner he will be able to begin the

-8-

process of true rehabilitation, with the assistance of the Probation Office and his family, that will allow him to build a life for himself and his children that does not involve drugs, gangs or crime.

Dr. Madelon Baranoski, who was appointed by the Court to perform a psychological evaluation of Mr. Pierce, concluded that Mr. Pierce is a good candidate for rehabilitation. See PSR Second Addendum ("Baranoski Rep."). Dr. Baranoski found that Mr. Pierce suffers from substance abuse and addiction, which had remained untreated, and that "the foundation of his addiction and of his personality lies in his early years when abuse, deprivation, loss, and confusion replaced the conditions necessary for healthy child development." Baranoski Rep. at 7-8. In spite of Mr. Pierce's problems, Dr. Baranoski expressed hope for his potential rehabilitation, noting that he had "managed his life with minimal violence," that he "shows no inherent disrespect or rejection of authority" and he "has the potential to become a successful member of society." Id. at 8. With the programs that will be available to Mr. Pierce when he is assigned to a facility, he will be able to live up to this potential.

The goal of rehabilitation should be carefully considered, particularly after Booker and Crosby. Judge Hellerstein of the Southern District recently sentenced a defendant who would have been classified as a career offender under the Guidelines to a

term of imprisonment less than that dictated by the Guidelines,
primarily on the basis of the need for rehabilitation:

> Rehabilitation is also a goal of punishment.  18 U.S.C.
> § 3553(a)(2)(D).  That goal cannot be served if a
> defendant can look forward to nothing beyond
> imprisonment.  Hope is the necessary condition of mankind
> [and a] judge should be hesitant before sentencing so
> severely that he destroys all hope and takes away all
> possibility of useful life.  Punishment should not be
> more severe than that necessary to satisfy the goals of
> punishment.

United States v. Carvajal, 2005 WL 476125 at *6 (S.D.N.Y. Feb.
22, 2005).

Mr. Pierce hopes to one day build a good, honest life for
himself and his children.  He hopes to help his younger brother,
Marcus, live a good life without needing to turn to gangs and
drugs for support.  He hopes to build a relationship with his
younger sister, NaCole, whom he only made contact with shortly
before his arrest on this offense.  He hopes to be able to repay
his adopted aunt and cousins for the kindness, love and support
they have given him throughout this process.  Most of all, he
hopes to be a real father to his son, Tyrus Jr., and his
daughters, Isis and Eniyah, while they are still children.

Mr. Pierce is doing his best while he is detained to lay the
groundwork that will enable him to realize these hopes when he is
released.  He is in regular contact with his children through
Nerissa Terry, the mother of his daughter Isis.  Ms. Terry helps
by making sure that Isis spends time with her big brother Tyrus

-10-

on a regular basis, and by keeping in touch with Tyrus and
Eniyah's mothers so that the children will have a sense of family
even though the man who connects them is in prison in another
state. Although he cannot be with them physically, Mr. Pierce is
doing what he can to let his children know that he loves them.

Mr. Pierce's younger brother Marcus was recently released
from state prison. Mr. Pierce has not been able to see Marcus,
but they have spoken by telephone a number of times. During
those conversations, Mr. Pierce has urged Marcus to stay out of
trouble so that he won't end up back in jail. Mr. Pierce wants
Marcus to learn from both of their mistakes. He has told Marcus
repeatedly: you do not want to end up in federal prison. Federal
prison is different, he tells him. If you get locked up on
federal charges, you won't be right down the street from home,
where your friends and family can visit you easily and you
recognize half the people locked up with you. And you will be
facing real, hard time -- years and years away from everything
and everyone you know. Mr. Pierce knows that from a prison cell
in another state he cannot protect Marcus from the life they were
both raised to know, but he is trying.

**C.    Other Factors To Be Considered**

Section 3553 requires the Court to consider "the nature and
circumstances of the offense and the history and characteristics
of the defendant[.]"  18 U.S.C. § 3553(a)(1) (2005).  Federal law

also provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661 (2005).  Thus, the Court may now consider even those factors which would, under the Guidelines, have been "discouraged."  These include Mr. Pierce's family situation, his drug dependence, his lack of educational and vocational skills, his psychological condition, his lack of guidance as a youth, and his young age at the time he committed his previous offenses.  Taking all of these facts into consideration, the Court should impose a sentence of 120 months.

While it is true that Mr. Pierce has had a number of run-ins with the law, Mr. Pierce is no drug kingpin.  He was never involved in criminal activity because he is an evil person, or a predator, but only because it was all he knew.  See Baranoski Rep. at 6 (noting that Mr. Pierce learns "through modeling - he learns what he experiences and what he observes").  The PSR and NCIC Report each indicate that Mr. Pierce has been convicted of a felony on only two prior occasions, and each of those convictions were for offenses involving street level sales of small amounts of marijuana.  He has never been found to possess a gun, or been arrested on weapons charges.  He was not a leader or an organizer of this or any other criminal enterprise.  In fact, during the

-12-

seven years from 1995 until his arrest in this matter, the defendant was arrested for only misdemeanor offenses.

Prior to his arrest on the instant charge, Mr. Pierce had served a total of thirty-eight months in jail.  The Second Circuit suggested in United States v. Mishoe, 241 F.3d 214 (2d Cir. 2001), that an "adequate deterrent effect" is achieved when the sentence imposed on a repeat offender is something like three times the time he has previously served.  See Mishoe, 241 F.3d at 220.  This consideration is even more significant under the new post-Booker system in which courts are to strive to achieve "somewhat more individualized justice."  Crosby, 397 F.3d at 114. In this case, three times the jail time Mr. Pierce has previously served would be approximately 114 months.  A sentence of 120 months thus presumptively provides an "adequate deterrent effect" for Mr. Pierce, and accords with the Second Circuit's guidance.

**D.    Adjustment for Duration of Detention**

Mr. Pierce has now been detained, first at Hartford County Correctional Center and then at Wyatt Detention Center, for 28 months.  He has been told that he has now been at Wyatt longer than any other detainee at that facility.  By the time he is assigned to a Bureau of Prisons facility, he is likely to have spent two and a half years in detention.  During his time at Wyatt he has been subjected to over-crowded conditions, sometimes being forced to live five to a cell.  As explained above, there

-13-

are very few programs available for Mr. Pierce at Wyatt, and what few there are he successfully completed long ago.  In 28 months of detention, Mr. Pierce has had no disciplinary problems, and has made remarkable efforts at rehabilitation.  But he is more than ready to move on to a facility that is equipped to deal with long-term residents and that will offer him the opportunity to continue the process of rehabilitation in a meaningful way.

His exceptionally lengthy period of pre-sentence detention has disadvantaged Mr. Pierce.  He has been unable to avail himself of the vocational and educational programs offered by the Bureau of Prisons.  He has been, essentially, in "limbo" for more than two years, never knowing how much longer he will be there, or where he may go when he finally leaves.  This uncertainty, coupled with the lack of available services, has taken an emotional and psychological toll on Mr. Pierce.  It is appropriate for the Court to take this factor into account in determining an appropriate sentence.

In addition, Mr. Pierce would be entitled to more than four months of "good time" credit if he had spent the last 28 months in the custody of the Bureau of Prisons.  See 18 U.S.C. § 3624(b)(1).  Mr. Pierce requests that the Court recommend that he be awarded "good time" credit for the time he has served prior to his assignment to a Bureau of Prisons facility.  However, there is no guarantee that he will receive such credit; that

-14-

determination is left up to the Bureau of Prisons.  See 28 C.F.R.
§ 523.17(l) ("A pretrial detainee may not earn good time while in
pretrial status.  A pretrial detainee, however, may be
recommended for good time credit. This recommendation shall be
considered in the event that the pretrial detainee is later
sentenced on the crime for which he or she was in pretrial
status.").  Accordingly, the defendant requests that the Court
also take this factor into consideration in determining an
appropriate sentence.

**III. CONCLUSION**

A sentence of 151 to 188 months would be "greater than
necessary" to achieve the purposes of a criminal sentence in this
case.  Dr. Baranoski concluded that Mr. Pierce "has the potential
to become a successful member of society."  Baranoski Rep. at 8.
She stated that Mr. Pierce "seeks a role model and acceptance"
and that he "would benefit from the appropriate half-way
house[.]"  Id.  Clearly, Dr. Baranoski does not believe that an
extensive term of incarceration is necessary for Mr. Pierce.  To
the contrary, Dr. Baranoski found that Mr. Pierce "can benefit
from therapy" and "shows no inherent disrespect or rejection of
authority."  Id.

Mr. Pierce will turn 30 this year.  He has grown up a lot
since he made the poor choices that led to where he is today.  He
is ready to be an adult, and to take care of himself and his

-15-

family.  With help from the rehabilitation programs that will be available to him once he is assigned to a facility, and once he is released, he can fulfill the promise that Dr. Baranoski saw in him "to become a successful member of society." Id. at 8.

Accordingly, for the reasons set forth herein and in the defendant's previous sentencing memoranda, the defendant respectfully requests that the Court sentence him to a term of incarceration of 120 months.  Such a sentence complies with the statutory minimum and maximum, adequately takes into account all of the factors set forth in 18 U.S.C. § 3553, and satisfies the requirement that the sentence be "sufficient, but not greater than necessary" to comply with the purposes of a criminal sentence.

Respectfully submitted,

THE DEFENDANT,
TYRUS PIERCE

By: _____
Thomas J. Murphy (ct07959)
Sarah A. L. Merriam (ct25379)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT  06103
(860) 278-5555
(860) 249-0012 Fax
E-mail: tmurphy@cemlaw.com
E-mail: smerriam@cemlaw.com

-16-

## CERTIFICATE OF SERVICE

I certify that on March 4, 2005, a copy of the foregoing was sent as follows to:

**BY FACSIMILE AND FIRST CLASS MAIL**

Raymond Miller, Esq.
Assistant United States Attorney
United States Attorney's Office
450 Main Street
Hartford, CT  06103

**BY FIRST CLASS MAIL**

Mr. Dennis Linder
United States Probation Officer
United States Probation Office
915 Lafayette Boulevard
Bridgeport, CT  06604

Sarah A. L. Merriam